TEMPO LIGHTING, INC. v. TIVOLI, LLC TEMPO LIGHTING, INC. v. TIVOLI, LLC TEMPO LIGHTING, INC. v. TIVOLI, LLC Mr. Lapple. May it please the Court. The Board erred in two ways. The Board's construction of the claim term, inert light, is not the broadest reasonable interpretation of that term that is consistent with the specification. In fact, it is inconsistent with the specification. Mr. Lapple, I have a question for you. At page 16 of the Joint Appendix, the Board found that none of the primary references were inert to light, meaning non-photoluminescent, because the examiner expressly found that each of the primary references lacked this claim feature. Now, I think you sort of approached this in your brief at page 22, the O3 brief. I'm concerned that the finding's unsupported, because the examiner found only that these references were not resistant to light degradation under its interpretation, its construction of inert to light, and it made no finding regarding photoluminescence. But you raised that in your brief, and there was no response to it. I want you to address it a little further, and then I want to hear what the other side has to say about it too. Yes, Reiner. You're right. The Board didn't have substantial evidence to make a finding of patentability, because what it did was it cut and pasted the re-examiner's findings of fact, which she had made under the old claim construction, the claim construction the Board had just vacated. The Board fundamentally made a logical error. This is not an error in terms of findings of fact. It was a logical error, much like in the Smith and Nethew case that I identified in my Rule 28J letter. The Board never did any analysis to figure out if the prior art references had the inert to light limitation pursuant to their construction. And because they didn't, they erred. I have a somewhat unrelated concern. How long has this case been pending? I understand that this case has been pending for quite some time, Your Honor, approximately nine years. Over nine years. You want us to send it back for another year or two? Your Honor, you don't need to send it back for another year or two. You can review the Board's claim construction de novo, and then reinstitute the correct claim construction the re-examiner found, and re-adopt her rejections under 103. The case ends. All claims are undeniable. I don't understand. She rendered her fact findings about what Johnsonville and the other primary references disclosed based on her claim construction, which you're arguing was incorrect. No, Your Honor, your arguing is correct. Oh, I see. You know what, in these re-exam things, I get confused about who's on first sometimes. I'm sorry. Yes, Your Honor. We have always supported the re-examiner's claim construction and still do here today. Your Honor, I think the other issue you may be concerned about is the length of time that this has taken. I think that this is not something that is going to be a long-term issue that the court has to worry about, in that inter-parties re-examination has gone away. You aren't going to be seeing many more of these cases. You're going to be seeing inter-parties review cases, which are going to be decided much more quickly. So I don't think that there is any problem with the length of time on this case. Moreover, it's not something that my client caused to happen. It's just the process. But one of the things you do argue to us is even under the correct construction, I think this is what you went over with Judge Wallach, that you believe that this case would have to be vacated and remanded because the board made a logical error in adopting the examiner's fact findings regarding the primary references. Is that right? Am I stating your argument correctly? Yes, Your Honor. But we actually believe that even if this court adopts and affirms the court's claim construction, you can still find the references anticipate or render obvious the claims. Oh, you want me to fact find about what the references disclose? No, Your Honor. All the fact finding was already done. No. How can you say that? I mean, I don't see the words non-photoluminescent in her opinion as applied anywhere to the original primary references. Certainly, I see some independent fact finding by the board on non-photoluminescence with regard to CONNU. I don't know if I'm saying it right, the secondary reference. But I don't see any non-photoluminescence focus in the fact findings made anywhere. And if that's the correct claim construction, don't we need them to go back and look at the references? I mean, I looked at Johnsonite and, I don't know, you want me to make a fact finding? That's what you want me to do? I don't think you have to look at Johnsonite 96. I think you can look at Mercer 89. And there's no contest between the parties that Mercer 89 does not disclose photoluminescence. I mean, I'm pretty sure when he stands up, he's going to say that's a question of fact. And so if he does, assuming that's what he says, that there's a question of fact about what it discloses, then I have to send this back, right? I mean, I can't do that. That's a matter of first impression on appeal, find facts and references that weren't found below. I don't think it's a question of fact, Your Honor. But what a reference discloses is not a question of fact? What a reference discloses is a question of fact, Your Honor. There's no way anyone could conclude that what's in Mercer 89 discloses photoluminescence. And I don't think that my friend will actually argue that point. So based on the record that's before the court, based on the record that was before the board, you can conclude, as a matter of law, that the claims were obvious, because obviousness is a matter of law. Based on an awful lot of underlying fact, right? Perhaps, Your Honor, yes. Your Honors, we have actually addressed most of the second error I wanted to talk about. Can I turn to the first error now, which is that the board's claim construction is not the broad, reasonable interpretation that is consistent with the specification. There's three things that are wrong with it. First, the specification actually directly contradicts the board's interpretation. Now, this is a patent that has only got two columns of disclosure. Only one embodiment is disclosed. Is this your capturing language? You think capturing requires re-emitting the light? Why is that? I can capture something and keep it until it's just flat-out dead. Your Honor, you're correct. This is a capturing language, and capturing doesn't imply for sure that you're going to re-emit it, but it is certainly something that a person of ordinary skill in the art of reading the specification would go, hmm, what am I supposed to do with that? The specification doesn't tell you. Heat it up. Well, if you heat it up, then there's not going to be an emission of light afterwards. But you don't know. I guess that's the point. You want me to conclude that clear language in the form of a disclaimer shouldn't be taken as such because there's at least one embodiment in the patent that might otherwise disclose later re-emitting the light. Your Honor, that's correct, but actually I would say I don't think that there is a clear disclaimer that's binding on the patent office. There might be a disclaimer in the prosecution history that's binding on the patent owner, but the patent office never addressed this issue. It was never squarely before the examiner. It was never directly addressed. So under this court's precedent of in re NTP, then the question of what this term means is not a settled question. It was addressed in the prosecution history, but the specification itself does not define the term. The specification doesn't say inert light. I guess I'm misunderstanding this argument. You're saying a disclaimer made during prosecution is not a disclaimer only if it's in the spec? I'm not following you. No, Your Honor. This is a question of claim construction. And so the re-examiner was correct in which she said in order for there to be a specialized definition of this term, that specialized definition had to have been present in the written description. Why? Why is it the broadest reasonable construction once the patentee has gone on record to disclaim a portion of the scope? Because under this court's precedent in, for example, Helms-Darfur, the court has consistently required that a specialized definition be included in the written description. And we're talking about this under the broadest reasonable interpretation standard, not under regular claim construction of the district court. I don't understand how the broadest reasonable interpretation doesn't take into account lexicography or disclaimer. It has to be the reasonable interpretation. And doesn't Judge Moore make an exceptionally good point that it's not going to be a reasonable determination if it overlooks these factors? Your Honor, it also can't be a reasonable interpretation if the definition is not supported anywhere in the written description. Wait, what do you mean? I mean, patentees are free to be their own lexicographer. I can say the sky is red, and no matter if that is completely inaccurate, I can say it in the patent, and then it becomes what binds me for the future. So why does it matter if it's correct or not or if it's disclosed in the spec? If he said it during prosecution, he's bound by it. If he said it during prosecution, he is bound by it. But it is not going to... If he said it in prosecution, he's bound by it. But that does not mean that that is the broadest reasonable interpretation because one of ordinary school in the art has to read the specification. The requirement is that the BRI has to be consistent with the specification, and there are multiple reasons why this claim construction is not consistent with the specification because it's not... Are you saying that a reasonable interpretation can ignore the prosecution history? No, Your Honor. And especially a very specific prosecution history as we have in this case? No, Your Honor. I'm not saying it should be ignored, and that's not what the re-examiner did. She considered it, and she rejected it because it would cause the claims to violate the written description requirement. I mean, this term is going to cause the claims to violate the written description requirement regardless. If that's the case, that's the case. But, I mean, that's not before us. We're dealing with the very... There may be a new matter problem here, to be blunt. Yes, Your Honor, there is. We all see there may be a new matter problem. But that shouldn't affect the way we interpret claims, should it? Yes, Your Honor, I believe it does. On what basis? On the basis set forth by the re-examiner and in our briefs. The broadest reasonable interpretation has to be consistent with the specification, and if it's not supported by the specification, it can't be consistent with it. Your Honor, for those reasons, I would ask that you reverse and find the claims unpackable. All right. Thank you, Mr. Lapple. Mr. Gray. Good morning. May it please the Court. My name is Gordon Gray. I represent the respondent and patent owners in this case. The only issue before the Court, properly, is the claim construction determined by the Board as overruling the examiner and supporting the patent owners' specific claim construction of inert to light from the prosecution history. I want to ask you the same question nine years, and you want us to send it back? I do not, Your Honor. I want you to affirm the Board's ruling and end this case. But how can we when there's difficulty with it? It appears that the Board may have acted arbitrarily and capriciously in applying that claim construction. Your opponent at least raised it, and there was no response to it in the red brief. I looked for it. Well, Your Honor, the issue was confronted both by the first re-examiner in this case and the second re-examiner in this case. The first re-examiner in this case did not reconstrue the term inert to light and instead looked at these references, Johnsonite, Mercer, NFLPA, so on and so on, and did not find that they anticipated, as Tempo is asking, anticipated the claims. So just by looking at inert to light, that claim construction was considered. I'm sorry, I don't understand that argument. The first re-examiner, maybe I don't know factually what you're talking about, but weren't they operating under the degradation of construction of inert to light? Your Honor, the construction of inert to light did not appear in the re-examination for almost two, two and a half years. And when it suddenly did, it appeared and it was wrong. Correct. Would you believe it was wrong? So why in the world, okay, I may not tell you what I'm thinking, but if later I tell you what I was thinking, why doesn't that matter? Here, the examiner may not have stated the claim construction, looked at these anticipation things, found there's no inert to light, then she comes along and tells you what she thinks inert to light means. Why aren't we to accept that that is the definition she was applying when she considered the anticipation argument? Well, also factually in this case, there are two re-examiners on the case. Am I getting the she-he wrong? He first, she second. Okay, I knew there was a lady examiner in here somewhere. And she was the one who came up with the new inert to light definition. The original inert to light definition was considered by the first re-examiner. But he never told us what he concluded it meant, correct? Had no reason to because the original prosecution history specifically laid out exactly what it meant, and the claims were read in that term. I don't know that we can be so sure of that because the second examiner came along and concluded that's not what it meant. So I don't know how I can rely on an unexpressed definition in the first case to fill in the fact-finding gaps that the board didn't make here. Well, I'm not sure what the re-examiner, I think we have to assume the re-examiners are doing their jobs, and that when they consider the prosecution history, the original prosecution history, and the scope of re-examination, which says that we cannot consider 112 issues, we have to consider the prosecution history from the original case, which is in Ray Morris, that they did their job properly and used that definition in the beginning. And when they reconstitute, that was... So what you're telling me, as a rule of law going forward, I should, whenever an examiner rejects a claim without stating a claim construction, I should assume that they adopted whatever I later determined is the correct claim construction. That's how I should assume they did their job properly. When there's an express claim construction in the original prosecution history, yes, that they used that from the original prosecution history because the later claim construction did not consider the original prosecution history at all, and that was per se unreasonable. When the re-examiner does something that's per se unreasonable, I think that it should not be considered by the court. And going back, Your Honor, Judge Rader, to the issue of nine years, the issues that they're bringing up on remand, particularly the citation of the Rexnard case, is that they get to offer up any claim rejection they want in response. Now, they submitted numerous references in their request for re-exam, and the re-examiner cited that the combination, in fact, they did kind of a kitchen sink request, that, well, you can combine these any way you want. And that resulted in approximately 33 million possible rejections. And TEMPO is seeking, essentially, to be able to raise any of those that they want after not filing a cross-appeal of any kind. We have to allow some of these issues to go under repose so that the record becomes manageable, particularly after this amount of time. But there's a regulation that expressly governs what they're allowed to raise by cross-appeal, isn't there? Isn't this a jurisdictional provision, 37 CFR 41.61D? Absolutely. And that regulation says that if there's any claim rejection that is not adopted, they need to cross-appeal. Actually, no. It says the requester may appeal to the board with respect to any final decision favorable to patentability, including any final determination not to make a proposed rejection. The including presupposes it's included within the predicate clause, and the predicate clause is you can only appeal any final decision favorable to patentability. They didn't have a final decision favorable to patentability. They had a final decision completely against patentability, so they had no right of independent appeal, as best I can tell, from the clear language of this regulation. Well, as I read the regulation, Your Honor, and I believe that the right of appeal notice supports it, is that the right of appeal notice is actually a mixed bag. And the reason that is, it's sent to both parties, and it says here are the rejections we're going to adopt, here are the rejections we are not going to adopt. And it gives that opportunity to both sides to say, well, wait a minute, we don't agree with that. We want to adopt these rejections or not adopt these rejections. The including with regard to the issues of patentability goes directly to this 33 million rejection possibility issue, is that if we don't limit those, you have these myriad rejections that can then be raised on remand or raised on appeal when they don't cross appeal. And I think this regulation is to prevent exactly that situation. But this regulation is crystal clear on its face. It defines your jurisdictional right to take an appeal or a cross appeal, and it says it's only in circumstances when there's a final decision favorable to patentability can you then appeal a final determination not to make a proposed rejection. I don't care what the document notice of appeal says. This is a regulation which is binding. I can't overlook the plain language of this regulation. Even if the board may be misapplying it, plain language speaks for itself. I believe the plain language shows that any final determination not to adopt a rejection. Only if there was a final decision favorable to patentability. And we don't have that here. Think of it like this from a policy perspective. Suppose he successfully invalidated your claims on obviousness, but he was worried that federal circuit jurisprudence may not be as favorable to him on obviousness, and he really wanted instead for the claims to be rejected on anticipation. Could he have affirmatively brought an appeal to the board? You weren't going to appeal. You don't even want to litigate this anymore. You weren't going to appeal. Could he have brought an appeal to the board saying, darn it, the PTO successfully rejected all of these claims, but I'd rather have them reject them under these other grounds. And could he have forced you to go to an appeal to the board on only that issue? Well, Your Honor, I believe contingent cross appeals would be that exact case. This doesn't mention contingent cross appeals. The regulation deals with appeals and cross appeals, not contingent cross appeals. Well, the regulation doesn't. Certainly Supreme Court doctrine and federal circuit cases on cross appeals require that these issues will go into repose if they're not contingently or affirmatively cross appealed. And I think that's important because, again, this is so wieldy. Could he have brought that initial appeal that I was talking about, though? You've got to admit, he can't bring that appeal, right, the one I hypothetically posed to you, which was your claims are rejected on obviousness, he'd rather have them rejected for anticipation. He doesn't get to appeal that as a matter of first right, does he? As a matter of first right, no. So he can't appeal that. So why am I going to read in here something more? Because that would have been a cross appeal issue, Your Honor, and I believe that that makes the issue at it forces them to pick their battles. I believe that they need to lay out exactly what they're going to continue fighting on, and if they don't. I know, but this regulation tells you what you're allowed to appeal or what you're allowed to cross appeal. I don't see anything that provides for what you would like. What you would like is the contingent cross appeal. It's not an unreasonable proposition, and it may even be sound policy to do what you're suggesting. It just doesn't seem to me to be consistent with the express language of the reg. That's the problem I'm having. Well, I think read in, well, regardless of the regulation, the interpretation of the regulation, I believe the Supreme Court specifically lays out that this kind of thing needs to be listed in a cross appeal or needs to be listed on an appeal or the issue goes into repose. What is your case that in administrative agency proceedings where there's a regulation to the contrary, nonetheless there has to be a contingent cross appeal? I don't have that specific of authority, Your Honor. I cite El Paso. They're only talking about federal courts in those cases and usually appellate courts. I don't know that the same would hold true in agencies, especially when there's regs that govern those circumstances. But I understand your precedent, and I don't want to eat up the rest of your time because you have some important other arguments that you want to make. So I should let you move on to them. Okay, well, I guess moving along, the number of 112 issues that are raised, I believe, is completely beyond the scope of reexamination in this case. That going into those sorts of things and claiming something violates 112 or not can't be at issue in this matter. Yet it's raised repeatedly by tempo, and that's clearly beyond the scope of reexamination. What about what he said, though, about, I'm going to say the reference wrong, was it Mercer? Am I saying it right? One of the primary references. There's two Mercers. All right, well, opposing counsel suggested that you would likely agree that that reference or either of the two Mercers, I don't know which one, but doesn't disclose photoluminescence, right? I guess my question was to him, which is the question of fact, right? And he was saying even if there is no fact-finding on this, there is no dispute about what at least that reference discloses. It does not disclose photoluminescence. Well, Your Honor, I don't need to argue that issue because the first reexaminer, the second reexaminer, and the board found that these references don't anticipate. They don't have non-photoluminescence or inert to light. But assume that, just for my hypothetical purposes, that I am convinced that the board made an arbitrary finding because it just imported the examiner's findings in, and those findings were made under a wrong claim construction. So assume that I'm starting from the proposition that the board did not make any fact-finding on this issue. And so now the question is what am I left to do given that that is the state of affairs? And so one possibility is, of course, to vacate and remand. But your opposing counsel suggests there's no need to vacate and remand, Your Honor, because there is no dispute over what Mercer does and does not disclose. And undisputedly, it discloses what it needs to here. So that's what he's saying, as I understand his argument. So I want to know from you, does it or does it not disclose photoluminescence? I think it does disclose photoluminescence in Mercer. I think this is a dispute that's been in existence for nine years over what Mercer, well, again, there's two Mercers, and there's two Johnsonites and code sections. I mean, they cite 25 different references. What does or does not show photoluminescence? And that all got set aside. And so there's been no findings of fact on that issue. And so I think that if it did come down to that, God forbid, yes, we'd have to remand if we needed a finding on that issue. Can you show me? Well, I guess you have one minute left. I'm not going to make you, but I'd love to see where in the document it discloses what you claim it discloses. You don't have a recollection by any chance, do you? Of Mercer? Which Mercer are you referring to, 89 or 95? Either of them. I think at least one of them refers specifically to a type of glow-in-the-dark strip on the reference. I think 89 in particular. I don't have the reference in front of me. Again, there's no finding on that. Well, with my reigning time, the capturing issue. Capturing clearly would be importing a limitation from the specification into the claims. Just because it discusses capturing, again, Your Honor pointed out, you don't have to do anything. You don't have to admit it. It can be heat that's stored in the device. It doesn't have to involve light. So the fact that the capturing term appears in the specification doesn't mean it needs to be then put into the claim terms. Thank you. Thank you, Mr. Gray. Mr. Latham. A little less than three minutes. Your Honor, there is nothing in Mercer 1989 that discusses photoluminescence. I hear you, but as I suspected, he was going to dispute your claim to that extent, and as an appeals court, I'm loathe to do any fact-finding. So I don't know what I can give you there. I understand that, Your Honor. I have to continue to disagree with you, but I believe that Judge Wallach is exactly right, that the Board was arbitrary and capricious in not making any fact-finding about whether the prior art satisfied their new claim construction. We still believe the claim construction is wrong, but at a minimum this case has to be remanded to the Board. Unless there's any further questions? Thank you very much. That concludes our morning. All rise.